IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GARY JON HUNTER #511806, | § | |
| PHILIP ROBERT CRITCHLEY, JR. | § | |
| #1021494, TONY RAMIREZ #621725, | § | |
| MICHAEL POWERS #1334320, CARY | § | |
| A. WILKE #1154402, GREGORY W. | § | |
| MCAFEE #1400766, STEVEN M. | § | |
| SCHUELKE #1094362, MARCELO | § | |
| PEREZ #845174, RICHARD C. | § | |
| STRICKLIN #1445258, NEVIL C. | § | |
| LOPEZ #1587220, AND MICHAEL R. | § | |
| ADAMS #1545301, | § | |
|     Plaintiffs | § | |
| | § | |
| v. | § | A-11-CV-857–SS |
| | § | |
| RICK PERRY (GOVERNOR OF TEXAS), | § | |
| JERRY MADDEN (STATE | § | |
| REPRESENTATIVE), AND JOHN DOE | § | |
| AND JANE DOE DEFENDANTS WHO | § | |
| VOTED TO APPROVE THE $100.00 | § | |
| COPAYMENT (82ND LEGISLATURE | § | |
| OF THE STATE OF TEXAS), | § | |
|     Defendants. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE SAM SPARKS
        UNITED STATES DISTRICT JUDGE

      Plaintiffs Gary Jon Hunter, Philip Robert Critchley, Jr., Tony Ramirez, Michael Powers, Cary

A. Wilke, Gregory W. McAfee, Steven M. Schuelke, Marcelo Perez, Richard C.  Stricklin, Nevil C.

Lopez, and Michael R. Adams, proceeding pro se, filed this civil rights lawsuit under 42 U.S.C.

§ 1983 complaining about the establishment of an annual copayment for health care services in the

Texas prison system under recently amended Texas Government Code § 501.063.

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Plaintiffs' Original Complaint (Document No. 1), Plaintiffs' Original Complaint and Request for Declaratory Judgment (Document No. 16), Plaintiffs' First Amendment to Original Complaint (Document No. 29), and Plaintiffs' Supplemental in Support of Injunctive Relief (Document No. 30).  Plaintiffs have been granted leave to proceed in forma pauperis.  *See* Orders (Nov. 7, 2011) (Documents 31-41).

### STATEMENT OF THE CASE

The plaintiffs are inmates in the custody of the Texas Department of Criminal Justice (TDCJ), currently confined at the Stevenson Unit in Cuero, Texas.  *See* 42 U.S.C. § 1983 Forms of Various Plaintiffs, at 1 (Sept. 29, 2011); Compl. at 3.  They bring this action under 42 U.S.C. § 1983, challenging Section 501.063 of the Texas Government Code, as amended by the Texas Legislature in the most recent legislative session and made effective September 28, 2011.  *See* SB 1, Acts 2011, 82nd Tex. Leg., 1st C.S., ch. 4 § 65.02 (enacted).  The plaintiffs all began serving their sentences prior to the effective date of the statutory amendment at issue.  *See* Plaintiffs' Offender Grievance Forms (filed Sept. 29, 2011).

Section 501.063 previously required the assessment of a $3 copayment for an inmate's health care visit when the inmate initiated that visit.  TEX. GOV'T CODE § 501.063(a) (1999).  Earlier this year, the Texas Legislature amended Section 501.063 to institute a $100 health services fee when an inmate "initiates a visit to a health care provider."  TEX. GOV'T CODE § 501.063(a)(1) (2011).

The $100 fee is an annual fee that "covers all visits to a health care provider that the inmate initiates until the first anniversary of the imposition of the fee." TEX. GOV'T CODE § 501.063(a)(2). The fee is paid out of the inmate's trust fund, and if the fund balance is insufficient to cover the $100 copayment fee, then one-half of each deposit to the fund shall be applied to the balance owed until the total amount owed is paid. TEX. GOV'T CODE § 501.063(a)(3). The statute continues to direct TDCJ to adopt policies to "ensure that before any deductions are made from an inmate's trust fund under this section, the inmate is informed that the health care services fee will be deducted from the inmate's trust fund." TEX. GOV'T CODE § 501.063(b). The statute also continues to direct that TDCJ "may not deny an inmate access to health care as a result of the inmate's failure or inability to pay a fee under this section." TEX. GOV'T CODE § 501.063(c). Subsequent to the enactment, TDCJ made available a notice regarding the new copayment to inmates at each facility. TDCJ Health Care Fee Notice to Offenders (Orig. Compl. Ex. A).

The plaintiffs seek a declaration that the amended statute violates their constitutional rights, specifically, that the copayment assessment violates the Due Process Clause of the Fourteenth Amendment through faulty notice of the recent enactment, constitutes double-taxing and extortion, supports a disparate impact Title VII claim, and is an impermissible taking that violates the Due Process and Equal Protection Clauses. *See, e.g.,* Orig. Compl. at 3-16. Plaintiffs also request compensatory damages, punitive damages in the amount of $1.00, and court costs. *Id.* at 16-17. They additionally seek an injunction compelling an immediate ceasing of the medical copayment assessment and removal of the statutory section at issue from the Texas Government Code. *Id.*

**DISCUSSION AND ANALYSIS**

I.    **STANDARD OF REVIEW**

    A.    **Rule 12(b)(6) Standard**

Dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) are appropriate when a complaint fails to state a legally cognizable claim.   Generally, a court acting under Rule 12(b)(6) considers the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take proper judicial notice. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).  Further, the complaint must be liberally construed in favor of the plaintiff and all pleaded facts must be taken as true. *See, e.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 1161 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

To avoid dismissal under Rule 12(b)(6), however, a complaint must include facts that "raise a right to relief above the speculative level" and into the "realm of plausible liability." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 557 n.5, 127 S. Ct. 1955, 1965, 1966 n.5 (2007).   In *Twombly*, the Supreme Court recognized that Rule 12(b)(6) must be read in conjunction with Rule 8(a)–which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief"–and concluded that this standard demands more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 555, 557, 127 S. Ct. at 1965-66.  As a result, a complaint must contain sufficient factual matter, which if accepted as true, "state[s] a claim to relief that is plausible on its face." *Id.* at  570, 127 S. Ct. at 1974.  In *Ashcroft v. Iqbal*, the Supreme Court made clear that this plausibility standard is not a "probability requirement," but instead imposes a standard higher than

"a sheer possibility that a defendant has acted unlawfully." 556 U.S. 662, –, 129 S. Ct. 1937, 1949 (2009).

Accordingly, when assessing the sufficiency of a complaint, a court must distinguish factual contentions that allege conduct on the part of the defendant that, if true, would establish the elements of the asserted claim, from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Although courts must assume the veracity of the facts asserted in a complaint, they are "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950. A court considering a complaint should first separate the factual and legal elements of claim, which involves "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth" and may be disregarded. *Id.* Second, a court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* In other words, a complaint must do more than merely allege the plaintiff's entitlement to relief. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). This plausibility determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. At the same time that courts examine a complaint for the plausibility of its factual allegations, courts remain obligated to construe a pro se complaint liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007).

**B.     Rule 12(b)(1) Standard**

Similarly, when making a Rule 12(b)(1) assessment, a court must accept a complaint's factual allegations as true. *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011).

A court may find that subject matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Wolcott*, 635 F.3d at 762-63. Under Rule 12(b)(1), a district court is empowered to consider matters of fact which may be in dispute. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

The Fifth Circuit has explained that a court's jurisdiction should generally be considered prior to assessment of the sufficiency of a complaint. *See id.*; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 118 S. Ct. 1003, 1012 (1998); *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209 (5th Cir. 2010).

## II.   ANALYSIS

### A.   Eleventh Amendment Immunity

The plaintiffs have named Governor Rick Perry, State Representative Jerry Madden, and Jane and John Doe Texas Senators and Representatives as defendants. The exception to Eleventh Amendment immunity for naming such state officials as defendants that is available through the *Ex parte Young* doctrine is limited to suits challenging the enforcement of statutes for which the defendant-state official has some responsibility for enforcing. The enforcement of the health care copayment fee statute does not appear to be within the authority of the Texas governor and its state legislators, but rather falls within the purview of the Texas Department of Criminal Justice, per Texas Government Code § 501.063.

The Fifth Circuit has explained that the *Ex parte Young* exception requires that the sued official have "'some connection with the enforcement of the act' in question or be 'specially charged with the duty to enforce the statute' and be threatening to exercise that duty." *Okpalobi v. Foster*,

244 F.3d 405, 414-15 (5th Cir. 2001) *(en banc)* (quoting *Ex parte Young*, 209 U.S. 123, 157, 158, 28 S. Ct. 441, 453 (1908)). "[T]he *Young* principle teaches that it is not merely the general duty to see that the laws of the state are implemented that substantiates the required 'connection,' but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Id.* at 416. In *Okpalobi*, the Fifth Circuit concluded that the governor and attorney general in that case enjoyed Eleventh Amendment immunity after it found no particular duty set forth in state law specifically charging those defendants with enforcement of the challenged statute, or any action on the part of the defendants to enforce the statute. *Id.* at 424.

For the same reasons, the named defendants also retain the protections of Eleventh Amendment immunity in this case. Under the provision at issue, Texas Government Code § 501.063, TDCJ is charged with promulgating and administering the new copayment policy. As a result, the proper state official defendant for this lawsuit is the executive director of TDCJ, Brad Livingston.

In the interest of judicial economy and in light of the plaintiffs' pro se status, this Court has the discretion to construe the pleadings liberally and direct the substitution of defendants to cure the error in the naming of the defendants. *See* FED. R. CIV. P. 8(f), 15, 21. The Court should dismiss the named defendants and substitute Brad Livingston in his official capacity as Executive Director of the Texas Department of Criminal Justice.

Under 28 U.S.C. § 1915(e)(2)(B), the Court shall dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from suit. The Court need not wait until the defendants have been served and may dismiss a case at any time on the basis of a

failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B).  Although Livingston should be substituted

for the named defendants, the Court need not wait until the substitution of parties is accomplished

and should, asa discussed below, proceed to dismiss the case on the basis of a failure to state a claim

upon which relief may be granted.

  **B.**  **Challenges to Texas Government Code § 501.063**

    **1.**  **Notice**

  The plaintiffs assert that the increase in the health care copayment violates the Fourteenth

Amendment's guarantee of due process because it was accomplished without fair notice, specifically,

without complying with Texas Government Code § 2001.023,  which requires state agencies to give

at least thirty-days notice before adopting a rule and to file a proposed rule with the Texas Secretary

of State for publication in the Texas Register.  Orig. Compl. at 3-7; Orig. Compl. & Req. for Dec.

J. at 3-4.  The plaintiffs assert that compliance with Texas Government Code § 2001.023 would have

allowed them an opportunity to comment on the proposed law.

  The plaintiffs' particular due process objection is unavailing.  The notice requirements

imposed by Texas Government Code § 2001.023 apply, per its plain terms, only to state agency rule-

making, and not to the legislative process.  TEX. GOV'T CODE § 2001.023(a)-(b) ("A *state agency*

shall give at least 30 days' notice . . . . A *state agency* shall file notice . . .") (emphasis added).

Moreover, even if the law was somehow not in compliance with Texas Government Code

§ 2001.023, this possible violation would not give rise to a due process claim.  *See McIntosh v.*

*Partridge*, 540 F.3d 315, 324 (5th Cir. 2008) ("[A] violation of state law is neither a necessary nor

a sufficient condition for a finding of a due process violation.  The fundamental issue in due process

law is not whether state officials violated state law, but whether they provided the plaintiff with the

[federal] constitutional minima.") (citation and quotation omitted).  In addition, legislation of general applicability is not subject to due process requirements.  *See, e.g., Texaco, Inc. v. Short*, 454 U.S. 516, 537, 102 S. Ct. 781, 796 (1982); *see also, e.g., Velasquez v. Woods*, No. 2:00-CV-0070, 2002 WL 32319000, at *2 (N.D. Tex. Oct. 28, 2002) ("any due process challenge to the application of the Texas DNA registration statute fails because the official action being challenged is legislative").  Lastly, to the extent that the plaintiffs challenge the sufficiency of the TDCJ Notice itself, the notice is exempted from the administrative requirements invoked by the plaintiffs.  *See* TEX. GOV'T CODE § 2001.226 ("This chapter [2001 of the Texas Government Code] does not apply to a rule or internal procedure of the Texas Department of Criminal Justice or Texas Board of Criminal Justice that applies to an inmate or any other person under the custody or control of the department or to an action taken under that rule or procedure."); *Foster v. Texas Dep't of Crim. Justice*, 344 S.W.3d 543, 548 (Tex. App.–Austin 2011, pet. denied) (holding that Texas Government Code § 2001.226 "unambiguously" exempts TDCJ rules and procedures that apply to inmates from Administrative Procedure Act's coverage).

The plaintiffs also complain that TDCJ has given inadequate notice of exactly what will trigger the copayment obligation because the TDCJ Notice includes information at variance with the language of the statute.  Supplemental in Supp. of Injunctive Relief at 1-3 (citing TEX. GOV'T CODE § 501.063(b) (providing that TDCJ "shall adopt policies to ensure that before any deductions are made from an inmate's trust fund under this section , the inmate is informed that the health care services fee will be deducted from the inmate's trust fund")).  They allege by way of illustration that on October 11, 2011, one of the plaintiffs, Michael Adams, sought treatment for chronic care injuries, including treatment for the HPV virus, and was charged the $100 copayment fee.  *See id.*

at 1-2 & Attached Aff. of M. Adams (Nov. 2, 2011).   Plaintiffs contend that this copayment

assessment shows that the TDCJ Notice is misleading because it states that chronic care visits will

not incur the copayment fee, thus demonstrating inconsistency between the notice and actual practice

in the Stevenson Unit of TDCJ.   They further assert that as a result of the misleading notice, one of

the plaintiffs, Cary Wilke, has submitted requests for information to the Stevenson Unit infirmary

inquiring if he will be charged the copayment fee for a visit to refill his asthma inhalers, but has not

received a response.   Supplemental in Support of Inj. Relief at 3.

The agency notice indeed varies from the language of the statute by elaborating health care

scenarios that will not trigger the statutory copayment.  *Compare* TEX. GOV'T CODE § 501.063

(limiting copayment to health care services when an inmate "initiates a visit to a health care

provider"), *with* TDCJ Health Care Fee Notice to Offenders (Orig. Compl. Ex. A) (listing

circumstances excluded from copayment).  The Notice states that inmates will not be charged for a

health care visit for "an emergency or life-threatening situation," "follow-up services recommended

by the health care staff," "chronic care (including communicable diseases such as HIV, AIDS and

TB)," "prenatal care," "health screening and evaluations related to the diagnostic and reception

process," or "health care services necessary to comply with State law and regulations."  *Id.*  One of

an agency's primary roles, however, is to develop and implement regulations based on legislative

enactments, and the TDCJ Notice merely reflects the performance of that task.  *See, e.g., Galveston

County v. Tex. Dep't of Health*, 724 S.W.2d 115, 123 (Tex. App.–Austin 1987, writ refused n.r.e.)

("the ultimate purpose of any administrative agency and its proceedings is the administration of a

statute or statutes in order to effectuate a purpose laid down by the Legislature"); *Browning-Ferris,

Inc. v. Brazoria County*, 742 S.W.2d 43, 53 (Tex. App.–Austin 1987, no writ) ("[a]dministrative

agencies exist to administer statutes").  Moreover, the plaintiffs do not suggest that the TDCJ grievance procedures will be unavailable for challenging any copayment assessments that they believe may have been made in error.

The Court should conclude that the plaintiffs fail to state a due process claim based on the copayment statute.

### 2.      Double-Taxing/Extortion

The plaintiffs allege that TDCJ is effectively double-taxing those who contribute to inmates' trust funds because the contributors pay taxes on their earned income, and then the amounts placed in the trust accounts are potentially assessed a copayment fee.  Orig. Compl. at 7-8; Supplemental in Support of Inj. Relief at 4-5; Orig. Compl. & Req. for Dec. J. at 4-5.  This challenge does not state a claim because the copayment is not a tax, but a fee paid for medical services.  The plaintiffs cite no authority to support their characterization of a copayment as a tax nor can the undersigned locate any such authority.  In addition, the plaintiffs fail to state a claim because they fail to allege that they were deprived of a right or interest secured by the U.S. Constitution or federal law.  *See, e.g., Doe v. Rains County Ind. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).

Plaintiffs additionally complain that the copayment fee amounts to extortion.  Orig. Compl. 7-8.  To the extent that plaintiffs are asserting that a crime has occurred, such allegations do not support a § 1983 claim. *See, e.g., Florance v. Buchmeyer,* 500 F.Supp.2d 618, 626 (N.D. Tex. 2007) ("a private citizen cannot enforce criminal statutes in a civil action"); *Mass v. McDonald's Corp.*, No. 3:04-CV-0483-M, 2004 WL 2624255, at *5 (N.D. Tex. Nov. 12, 2004) (same); *Vella v. McCammon*, No. Civ. H-85-5580, 1986 WL 15772, at *2 (S.D. Tex. Jul. 29, 1986) (holding that

allegations that defendants committed extortion and criminal conspiracy under federal law did not give rise to a civil cause of action).

The Court should conclude that the plaintiffs fail to state a claim for which relief can be granted based on their double taxation and extortion theory.

### 3. Disparate Impact

The plaintiffs allege a disparate impact employment claim based on the alleged disparate effects of the amended copayment statute. Orig. Compl. at 8-13; Orig. Compl. & Req. for Dec. J. at 5-7. The plaintiffs acknowledge that they are not paid for their work while confined and are not recognized as employees under the Federal Labor Standards Act, but assert that a laborer-employer relationship nevertheless exists which entitles them to the protections of 42 U.S.C. 2000e-2. *Id.* at 10.

The plaintiffs lack any authority to support the contention that prisoners in their particular setting are protected by Title VII as employees. The Fifth Circuit has clearly held that requiring inmates to work without compensation does not violate the Constitution and that TDCJ maintains discretion to determine whether and under what circumstances inmates will be paid for their labor. *Wendt v. Lynaugh*, 841 F.2d 619, 621 (5th Cir. 1988); *see also Ali v. Johnson*, 259 F.3d 317, 317 (5th Cir. 2001).

In addition, the plaintiffs fail to allege a prima facie Title VII disparate impact claim. To state a prima facie case of Title VII employment discrimination through disparate impact, a plaintiff must allege that the employer had a facially neutral employment practice or policy that caused a disparate effect on members of a protected class. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S. Ct. 849, 853 (1971); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 275-76 (5th Cir. 2008);

12

*Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 578 (5th Cir. 2003).  The plaintiffs fail to allege that an *employment or personnel* policy or practice causes a disparate impact on the basis of a protected status.  *See, e.g., Ricci v. DeStefano*, – U.S. –, –, 129 S.Ct. 2658, 2673 (2009) ("Under the disparate-impact statute, a plaintiff establishes a prima facie violation by showing that an employer uses '*a particular employment practice* that causes a disparate impact on the basis of race, color, religion, sex, or national origin.'" (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(I)) (emphasis added)).  The plaintiffs complain only of the legislature's decision to impose a copayment assessment and identify no particular employment practice or policy.

For these reasons, the Court should dismiss the Title VII claim for a failure to state a claim upon which relief may be granted.

### 4.  Discrimination Against Wealthy

The plaintiffs also allege that the new copayment will discriminate against an unprotected group, the wealthy, by requiring assessments against funded inmate trust accounts and allowing indigent offenders to avoid paying the copayment.  Orig. Compl. at 13-15.

To the extent that the plaintiffs are asserting an independent challenge, they fail to state a claim because they fail to allege that they were deprived of a right or interest secured by the U.S. Constitution or federal law.  *See, e.g., Doe v. Rains County Ind. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).  For this reason, the Court should also dismiss this claim.

### 5.  Taking

Lastly, the plaintiffs contend that the assessment of a copayment constitutes an impermissible taking without due process and equal protection protections.  Supplemental in Support of Inj. Relief at 5-6.  The plaintiffs suggest that there may be times that a patient does not receive a $100 worth

of medical services in a year, but will still be required to pay the entire copayment.  They also rely on the provision in Texas Government Code § 501.063(d) that directs TDCJ to use any collected copayment monies to cover the costs of its provision of health care and directs the Texas Comptroller to transfer any annual surplus to the State's general revenue fund.

This takings claim must fail because there is no taking.  The plaintiffs receive health care in exchange for the copayment.  *See Reynolds v. Wagner*, 128 F.3d 166, 180 (3d Cir. 1997) ("[I]n exchange for the fees, the inmates receive the benefit of health care, the value of which undoubtedly exceeds the modest fee assessed ."); *Bailey v. Carter*, No. 99-4282, 2001 WL 845446, at *2 (6th Cir. July 20, 2001) (rejecting takings challenge to copayment).  Inmates' trust fund accounts are debited because they are purchasing something–medical care–of their own volition; only inmate-initiated medical visits trigger the copayment charge.  The plaintiffs' takings theory is premised on a supposition that the $100 copayment may sometimes exceed the value of medical services and that an annual surplus of copayment funds will exist that will be directed to the State's general revenue fund.  Such hypothetical and speculative allegations cannot withstand the Federal Rule of Civil Procedure 12(b)(6) standard.

The Court should also dismiss this claim as well for failure to state a claim.

### RECOMMENDATION

For these reasons, it is recommended that the Court dismiss the named defendants on the basis of Eleventh Amendment immunity, direct the substitution of Brad Livingston in his official capacity as Executive Director, Texas Department of Criminal Justice, for the named defendants, and dismiss the complaint with prejudice for failure to state a claim upon which relief can be granted.

Further, all remaining pending motions should be denied as moot.

It is also recommended that the plaintiffs should be warned that if a plaintiff files more than three actions or appeals while he is a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim on which relief may be granted, then he will be prohibited from bringing any other actions in forma pauperis unless he is in imminent danger of serious physical injury.  *See* 28 U.S.C. § 1915(g).

Lastly, in the event this Report and Recommendation is accepted, adopted, or approved, it is  recommended that the Court direct the Clerk to e-mail a copy of its order and judgment to the Pro Se Clerk for the United States District Court for the Eastern District of Texas.

### OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The district court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall also bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 26th day of January, 2012.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE